UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JOSHUA LAMAR MOORE,<br><br>    Plaintiff,<br><br>    v.<br><br>CHILDS, LORI BYRD, and GRANT COUNTY SHERIFF,<br><br>    Defendants. | CAUSE NO. 1:24-CV-333-HAB-SLC |

OPINION AND ORDER

Joshua Lamar Moore, a prisoner without a lawyer who goes by Joshua Davis, filed a motion for a preliminary injunction. ECF 3. The Grant County Sheriff has responded, and Davis has replied. ECF 27, 21, 22. The motion is ready to be decided.

**I. Legal Standard**

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

On the first prong, "the applicant need not show that [he] definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a

mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.* at 763 (quotation marks omitted). In assessing the merits, the court does not simply "accept [the plaintiff's] allegations as true" or "give him the benefit of all reasonable inferences in his favor, as would be the case in evaluating a motion to dismiss on the pleadings." *Doe v. Univ. of S. Indiana*, 43 F.4th 784, 791 (7th Cir. 2022). Instead, the court must make an assessment of the merits as "they are likely to be decided after more complete discovery and litigation." *Id.*

On the second prong, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. Mandatory preliminary injunctions—those "requiring an affirmative act by the defendant"—are "cautiously viewed and sparingly issued." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). Additionally, in the prison context, the court's ability to grant injunctive relief is limited. "[I]njunctive relief to remedy unconstitutional prison conditions must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (citation and internal quotation marks omitted); *see also Rasho v. Jeffreys*, 22 F.4th 703, 711-13 (7th Cir. 2022) (outlining strict limitations on granting injunctive relief in correctional setting).

As outlined in the screening order, Davis alleges he is not getting adequate medical care at the Grant County Jail for a pre-existing shoulder injury. ECF 6. He claims that at the time he entered the jail, he was under the care of a doctor for a shoulder injury and needed surgery. He further claims he was not allowed to wear the arm brace he was using when he entered the jail. And, finally, he alleges he should have been housed in the medical ward, not general population. He is proceeding on a claim for damages against Lori Byrd, who made the treatment decisions at issue, and against the Grant County Sheriff for prospective injunctive relief related to his medical care. He is also proceeding on a claim against Detention Deputy Childs on a claim for failing to protect him from an attack that is unrelated to the matters at issue in this preliminary injunction motion.

Pretrial detainees are entitled to constitutionally adequate medical care under the Fourteenth Amendment, which requires jail staff to take "reasonable available measures" to address a "risk of serious harm" to their health or safety. *Pittman v. Madison Cnty.*, 108 F.4th 561, 572 (7th Cir. 2024). Whether a plaintiff is being provided reasonable care is determined by a purely objective standard. *Id.* The reasonableness of the care provided is assessed based on whether "reasonable officers under the circumstances would have understood the high degree of risk involved, making the consequences of the defendants' conduct obvious." *Id.* (emphasis omitted). Action or inaction can be unreasonable if that decision is "not rationally related to a legitimate governmental objective" or is "excessive in relation to that purpose." *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015). "Reasonableness, in turn, must be determined in

3

light of the totality of the circumstances." *Pulera v. Sarzant*, 966 F.3d 540, 550 (7th Cir. 2020). "[L]iability for *negligently* inflicted harm is categorically beneath the threshold of constitutional due process." *Kingsley*, 576 U.S. at 396 (quotation marks omitted).

## II. Facts

The Sheriff addresses two particular areas of Davis' care at the jail: (1) the care he is receiving for his shoulder injury, including his request to wear his arm in a sling, and (2) whether Davis is appropriately housed in general population and not a medical block. ECF 17 at 1. The Sheriff argues that preliminary injunctive relief is not warranted and has submitted medical and other records in support.

### A. *Medical Care for Shoulder Injury*

The record reflects that when Davis entered the Grant County Jail on January 17, 2024, he had been under the care of a doctor for the past five months for a shoulder injury following a car accident. ECF 1-3 at 1. Davis had completed physical therapy and received an injection in his shoulder, but pain persisted. *Id.* At this point, Davis was prescribed the muscle relaxant cyclobenzaprine and the NSAID meloxicam, and the doctor recommended that he have an MRI on his shoulder. *Id.* But less than a week later, Davis was arrested and booked into the jail. ECF 17-1 at 1.

At booking on January 17, 2024, jail staff completed a medical screening. ECF 17-1 at 3-4. In that screening, Davis stated that his arm was broken and that he brought the medication cyclobenzaprine with him. *Id.* at 3. But he responded "no" to the question whether he needed medical attention right now. *Id.* at 4. In the Initial Health Assessment, it was noted that they received records from Fort Wayne Ortho regarding a

4

displaced fracture of his right shoulder that had healed routinely. ECF 17-5 at 2. The assessment noted the next step in Davis' treatment was to have an MRI with possible surgical intervention, but the MRI did not happen because of Davis' arrest. *Id.* The initial plan of care at the jail was to continue Davis on the NSAID meloxicam and for him to follow up with his ortho upon release. *Id.*

On March 12, 2024, Davis was seen at sick call due to complaints of right shoulder pain. ECF 17-7 at 16. The doctor conducted an examination and noted limited range of motion to his shoulder and pain with flexion and extension. *Id.* at 18. The plan continued to be conservative treatment while at the jail, and Davis could pursue surgical treatment upon his release. *Id.* at 16. Davis stated that he had completed physical therapy and was not interested in pursuing it any further. *Id.* The doctor prescribed the muscle relaxant methocarbamol for the pain in addition to the meloxicam previously prescribed and requested that Davis receive a bottom bunk pass. *Id.* He allowed Davis to have a sling, but advised him not to wear it 24/7 so that adhesions would not get worse. *Id.*

On April 9, 2024, the doctor examined Davis again. ECF 17-7 at 27. The doctor put him back on Flexeril (cyclobenzaprine), the medication he was taking when he entered the jail, for the pain. *Id.* at 30. The physical exam of the shoulder did not show much change from a prior exam in January, and the doctor noted that custody staff reported seeing him playing cards and flipping cards with no apparent issues in doing so. *Id.* at 27. The doctor noted that Davis' complaints of pain seemed out of proportion

5

to the x-ray findings and recommended an offsite evaluation at a local ortho to determine the cause of the pain. *Id.*

Davis had an ortho appointment at Marion Health Ortho on April 18, 2024. ECF 17-7 at 31. The doctor there recommended that he get an MRI of his right shoulder. *Id.* at 33. There were two attempts to have the MRI, one on May 9, 2024, and one on May 14, 2024. *Id.* at 39. Neither happened because, as described by the doctor:

> Pt had appt today for MRI of shoulder, security was reviewing pt CHIRP messages and discovered that the pt was corresponding with his family and they were aware of the appt today and were planning to be there at his appt. This is the second time this appt has had to be cancelled due to the patient and family knowing about the appt. Staff relayed today that the patient has been found to have his CHIRP with him when he is going out to appts and this is not allowed. Based on the pt behavior and that the family or pt has now 2x found out about the appt and that the pt has tried to take a communication device with him, staff were informed to notify the jail commander of these occurrences and to ask for guidance as to whether more appts should be made.

*Id.* The doctor did not believe it was necessary to try and schedule another MRI:

> The pt condition of his shoulder is documented and was present prior to his arrival. It is not felt that there will be significant deterioration of the patient condition should the patient need to wait until he is released to f/up on this condition.

*Id.*

In response to a medical request Davis sent in about Flexiril, the physician assistant (who had replaced the doctor as the medical provider for the jail) changed that prescription back to the muscle relaxant methocarbamol on June 11, 2024. ECF 17-7 at 41. The physician assistant declined to reschedule the MRI, noting:

> The MRI will not be rescheduled due to security reasons as his family keeps finding out when the appointment is and showed up at the orthopedic office one day when it was scheduled.

*Id.* Both the physician assistant and the doctor determined that waiting to conduct the MRI "will not significantly deteriorate his condition or overall prognosis." *Id.*

6

Davis continues to be prescribed meloxicam and methocarbamol. ECF 17-7 at 68. On July 23, 2024, a nurse assessed him following complaints of increased anxiety, restlessness, and trouble sleeping due to shoulder pain. *Id.* at 67-69. He was prescribed the antianxiety medication Buspirone. *Id.* at 69.

**2.** *Appropriate Housing*

The record reflects that on March 12, 2024, the doctor requested that Davis receive a bottom bunk pass. ECF 17-7 at 6. At a medical exam on April 9, 2024, Davis complained that he did not have a bottom bunk, so the doctor said he would speak to security about that. *Id.* at 27. The nurse confirmed with custody staff that Davis was not assigned to a top bunk; he was assigned to a "boat,"[1] which would be on the floor. *Id.* at 30.

Davis submitted another medical request on April 25, 2024, insisting that he has been assigned to the top bunk. ECF 17-7 at 34. The nurse confirmed that his official housing assignment was 2C overflow 3, which is on a boat not a top bunk. *Id.* An email was sent to all jail staff to be certain that Davis was on a lower bunk at each roll call. *Id.* The next day, the nurse called the floor officer to check on his bunk assignment, and he was in a top bunk. *Id.* As a result, Davis was reassigned to a single cell to ensure that he is on a lower bunk. *Id.* That same day, he was moved to a single cell with a lower bunk. *Id.*; ECF 17 at 6. In June 2024, Davis submitted a medical request, asking to be moved to

---

[1] The Sheriff explains that a boat "refers to a plastic shell, on the floor, used as a bed in correctional facilities." ECF 17 at 5.

7

a medical block.² The physician assistant concluded that he was sufficiently housed on a lower bunk and declined to recommend that he be moved. ECF 17-7 at 41.

**II. Analysis**

These records reflect that medical staff at the jail have taken steps to treat Davis' shoulder injury.³ They began with medication for the pain, and altered his medications as Davis complained of continued pain. Davis argues that the medication was not an objectively reasonable treatment because he is still in significant pain. But the Fourteenth Amendment requires only that he be given objectively reasonable medical care, not that the treatment ultimately is effective. *Cf. Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) ("It would be nice if after appropriate medical attention pain would immediately cease, its purpose fulfilled; but life is not so accommodating. Those recovering from even the best treatment can experience pain. To say the Eighth Amendment requires prison doctors to keep an inmate pain-free in the aftermath of proper medical treatment would be absurd."). And, here, medical staff did not choose one course of treatment and stick to it, regardless of Davis' condition. They changed his

---

² The Sheriff represents that the Grant County Jail does not have a designated medical block. ECF 17 at 1-2. Davis confirms this, stating the jail's policy is for inmates with a medical need that requires segregation to be housed in administrative segregation. ECF 22 at 4.

³ Davis' complaints about being denied an arm sling are not at issue in this motion because the record reflects that as of March 12, 2024, he was issued a sling, and Davis does not contest that he continues to have access to it.

medication in an attempt to alleviate his pain. Davis has presented nothing to suggest their medication choices were objectively unreasonable.

Davis further argues that he is receiving constitutionally inadequate medical care because the MRI has not been rescheduled. He argues that the defendants did not provide any evidence that he was corresponding with his family members about the MRI appointments, and he denies that any of his family members showed up at his MRI appointments. He further states that his CHIRP would have been deactivated when he left the building and, anyway, it was confiscated before transport.

Davis's pain will likely continue until he has corrective surgery, and the choice not to reschedule the MRI will delay that surgery and prolong Davis' pain. The evidence here shows the denial of the MRI is primarily based on jail security, and secondarily on the medical determination that the MRI could be postponed without further deterioration of Davis' condition. Davis can prevail if he establishes this decision not to reschedule the MRI is "not rationally related to a legitimate governmental objective" or is "excessive in relation to that purpose." *Kingsley*, 576 U.S. at 398. Jail security is a legitimate governmental objective. Although Davis contests that his family members showed up at the MRI appointments, the court declines to credit him over the notes in the medical record for purposes of a preliminary injunction. Further, the decision to delay the MRI until Davis is released from the jail is not excessive in relation to jail security needs. Both medical care providers have determined his medical condition will not get worse if he waits, and jail stays are typically of short duration. In fact, Davis' criminal trial is scheduled for October 21, 2024, just a few weeks

9

away. *See State v. Moore*, No. 27D01-2401-F4-000003 (Grant Super. Ct. filed Jan. 19, 2024), available at mycase.in.gov.

Finally, as to his housing assignment, it is undisputed that at this point, Davis is sleeping on a bottom bunk, and a preliminary injunction concerns whether he is *currently* receiving constitutionally adequate care. *See Al-Alamin v. Gramley*, 926 F.2d 680, 685 (7th Cir. 1991) ("When there is no continuing violation of federal law, injunctive relief is not part of a federal court's remedial powers."). Davis cites to jail policy that inmates with a physical condition or illness that requires segregation or isolation from the general population shall be placed in administrative segregation. ECF 22 at 4. He argues that his condition should have warranted placement in administrative segregation. However, both medical providers who examined him determined that his medical needs require only a bottom bunk, and they followed up to ensure that he was actually placed there. Davis does not explain why, medically, a bottom bunk is insufficient. If he has other reasons for wanting to be in segregation, that is outside the scope of this preliminary injunction motion.

### III. Conclusion

It is unfortunate that Davis will continue to be in pain while he waits for an MRI and a further diagnosis. But he has not demonstrated a likelihood of success on a claim that his current medical care is objectively unreasonable.

For these reasons, the court DENIES the plaintiff's motion for a preliminary injunction (ECF 3).

SO ORDERED on October 3, 2024.

                                                      s/ *Holly A. Brady*  
                                                    CHIEF JUDGE HOLLY A. BRADY  
                                                    UNITED STATES DISTRICT COURT